UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Carlos Montoya, et al., | 2:16-cv-00032-JAD-VCF |
| Plaintiffs | **Order Regarding Motions to Dismiss** |
| v. | [ECF Nos. 4, 23, 24] |
| Richard Smith, et al., | |
| Defendants | |

Carlos Montoya, Maria Landeros, and the estate of Eric Montoya sue the United States of America, the Las Vegas Metropolitan Police Department ("Metro"), its sheriff Douglas Gillespie, Deputy District Attorney Danielle K. Pieper, four law-enforcement officers, and inmate Raul Gonzales in connection with Eric Montoya's death. They allege that Metro, the FBI, and District Attorney Pieper recruited Gonzales to be a police informant; but Gonzales—a violent gang member with a long criminal record—perpetrated crime instead of investigating it, ultimately shooting and killing Montoya in order to keep his status as an informant a secret.[1]

Plaintiffs allege that defendants violated their substantive due process rights by recruiting Gonzales and thereby exposing Montoya to danger he would have otherwise not have faced.[2] District Attorney Pieper moves to dismiss, arguing that she is entitled to absolute immunity because the complaint alleges nothing beyond her role as Gonzales's prosecutor.[3] Metro and Sheriff Gillespie also move to dismiss, arguing that they are not proper defendants for plaintiffs' federal

---

[1] *See generally* ECF No. 1.

[2] *Id.*

[3] *See* ECF No. 4 at 8.

claims because they are mere employers and plaintiffs' *Monell* claim against them is implausible.[4] Finally, the individual law-enforcement officers move to dismiss, arguing that they are entitled to qualified immunity because, under Ninth Circuit law, there was no clearly established right to be free from a violent-criminal-turned-police-informant.[5]

I grant the motions because I find that the allegations limit Pieper's role to her prosecutorial functions and do not tie Sheriff Gillespie personally to the incident in any way. I also find that plaintiffs' *Monell* claim is implausible and that the law-enforcement officers are entitled to qualified immunity because it was not clearly established in 2013 that the state creates a danger when it recruits a violent criminal as a police informant. However, I grant plaintiffs leave to file an amended complaint if they can plead facts showing that (1) Pieper stepped into the shoes of law enforcement, (2) Sheriff Gillespie was personally involved in the events leading to Montoya's death, or (3) Metro had an unwritten custom, policy, or history of recruiting violent criminals as informants.

### Background

The factual backdrop[6] to this litigation is tragic but straightforward: Raul Gonzales was a felon and member of the 28th Street Gang. He was arrested and detained in the Clark County Detention Center ("CCDC") for robbery and possession of a firearm[7] when the FBI allegedly recruited him to be a police informant.[8] Deputy District Attorney Pieper—who had been prosecuting Gonzales—assisted in the recruitment efforts by negotiating plea agreements and appearing before the judges presiding over Gonzales's cases to arrange for his release.[9]

---

[4] *See* ECF No. 23 at 9–13.

[5] *See* ECF No. 24 at 13.

[6] These facts come from the complaint and I accept them as true for purposes of these motions to dismiss.

[7] ECF No. 1 at ¶¶ 27–29.

[8] *Id.* at ¶ 50–53.

[9] *Id.* at ¶¶ 48, 62.

The judges reluctantly agreed to release Gonzales,[10] and Gonzales soon began dating Eric Montoya's niece, Jennifer Gascon.[11] As Gonzales spent more time with Gascon's family, Montoya began distancing himself from Gonzales because he had discovered that Gonzales was an informant.[12] Displeased with Montoya's behavior, Gonzales took it upon himself to pay Montoya an early morning visit; he shot five rounds through Montoya's front door—killing him.[13] Montoya's girlfriend, Maria Landeros, and the couple's four sons rushed downstairs to find Montoya bleeding to death on the living room floor.[14]

Landeros, Montoya's estate, and his adult son, Carlos, commenced this action on their own behalf and on behalf of Montoya's three minor children. After extensive motion practice, the parties agreed that the individual law-enforcement officers were federal employees acting within the scope of their employment,[15] and I dismissed the state-law tort claims against the federal defendants without prejudice so they could be first exhausted under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(d)(1).[16] They also agreed that a handful of claims should be dismissed, leaving only: substantive due-process claims against the law-enforcement officers (counts III, IV, V, VI), conspiracy claims against the law-enforcement officers and Pieper (count VIII), a *Monell* claim against Metro and Sheriff Gillespie (count VIII), and a wrongful-death claim against Gonzales (count IX). All of these remaining claims—save for the wrongful-death claim against Gonzalez—are challenged by these pending motions.

---

[10] *Id.* at ¶ 68.

[11] *Id.* at ¶ 83.

[12] *Id.* at ¶¶ 91, 104.

[13] *Id.* at 106–07.

[14] *Id.*

[15] *See* ECF Nos. 22, 39.

[16] *See* ECF Nos. 34 (motion to dismiss); 39 (non-opposition); 43 (minutes of hearing at which the motion was granted).

## Discussion

**A.     Motion-to-dismiss standard**

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."[17]  While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[18]  "Factual allegations must be enough to rise above the speculative level."[19] To survive a motion to dismiss, a complaint must "contain [] enough facts to state a claim to relief that is plausible on its face."[20]

District courts must apply a two-step approach when considering motions to dismiss.[21]  First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.[22]  Legal conclusions, however, are not entitled to the assumption of truth even if cast in the form of factual allegations.[23]  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[24]

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[25]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[26]  If

---

[17] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[19] *Twombly*, 550 U.S. at 555.

[20] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[21] *Id.* at 679.

[22] *Id.*; *Brown v. Elec. Arts, Inc*. 724 F.3d 1235, 1247-48 (9th Cir. 2013).

[23] *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.

[24] *Iqbal*, 556 U.S. at 678.

[25] *Id.* at 679.

[26] *Id.* at 663.

the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief."[27]  When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed.[28]  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense."[29]

**B.     DA Pieper is entitled to absolute immunity because the complaint alleges nothing beyond her role as Gonzales's prosecutor.**

"Prosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts."[30]  The Supreme Court explained the scope of a prosecutor's absolute immunity in *Van de Kamp v. Goldstein*.[31]  Absolute immunity "applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application and encompasses any conduct that is "fairly within [the prosecutor's] function as an advocate" of the state.[32]  But it does not apply when a prosecutor engages in "investigative or administrative tasks" or "gives advice to police during a criminal investigation."[33]  Because prosecutorial immunity is a privilege from being sued—and not just a defense to liability—its application must be decided "at the earliest possible stage in litigation."[34]

Viewed under this standard, plaintiffs have pled Pieper out of court.  The complaint

---

[27] *Id.* at 679 (internal quotation marks and citation omitted).

[28] *Twombly*, 550 U.S. at 570.

[29] *Iqbal*, 556 U.S. at 679.

[30] *Lacey v. Maricopa Cty.*, 693 F.3d 896, 912 (9th Cir. 2012).

[31] *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009).

[32] *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

[33] *Van de Kamp*, 555 U.S. at 343.

[34] *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

unequivocally states that, "[d]uring all times material to this action, Deputy DA Pieper was acting within the scope of her office or employment as a prosecuting attorney with the Office of the District Attorney for Clark County, Nevada."[35] And all of plaintiffs' factual allegations against Pieper support the legal conclusion that the conduct plaintiffs sue her for all falls under the umbrella of functions "intimately associated with the judicial phase of the criminal process."[36] The complaint alleges that "Pieper was the prosecutor assigned to both cases pending against Gonzales,"[37] that she filed motions on behalf of the state and appeared in court to advocate the motions,[38] and that she eventually negotiated a plea deal on behalf of the state that resulted in Gonzales's release and employment as an informant.[39] These are all traditional functions of an advocate in the judicial system, so they are protected by absolute immunity.[40]

Plaintiffs argue that Pieper is not entitled to absolute immunity because she stepped into the police's shoes by engaging in conduct to recruit and cultivate Gonzales as an informant.[41] But the complaint contains no allegations that Pieper stopped prosecuting and—at some point—began cultivating Gonzales as an informant or using him to investigate crime. And it is well settled that a plaintiff may not augment its pleadings by making arguments in a motion.[42]

---

[35] ECF No. 1 at ¶ 19.

[36] *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

[37] *Id.* at ¶ 43.

[38] *Id.* at ¶¶ 45–48.

[39] *Id.* at ¶¶ 62, 66–73.

[40] *Imbler*, 424 U.S. at 430.

[41] ECF No. 10 at 5:7–9 ("In its most basic articulation, Plaintiffs' Complaint seeks to hold Pieper liable for her actions, in conjunction with the other defendants, in recruiting, cultivating, and activating an informant.").

[42] *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989) (citing *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984)) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion").

In short, the complaint alleges that each action Pieper took to obtain the plea deal was in court or judge's chambers and in the presence of defense counsel. I therefore grant Pieper's motion and dismiss the claims against her. However, in light of the arguments plaintiffs' counsel asserted at oral argument, I do so with limited leave to amend. Plaintiffs have until July 18, 2016, to file an amended complaint if they can plead facts showing that Pieper was also performing an administrative or investigative role and is, therefore, not entitled to immunity.

**C. Metro's motion to dismiss plaintiffs' *Monell* claim is granted because plaintiffs merely recited the elements of a cause of action, and its motion to dismiss the state-law claims against Sheriff Gillespie is granted because there are no factual allegations against him.**

In addition to Pieper, plaintiffs also sue Metro, Sheriff Gillespie, and four law-enforcement officers (Richard Smith, David Sazer, "Marty LNU," and Michael Twomey-Walsh[43]). At oral argument, the parties stipulated that the United States should be substituted in for three of the officers and that the state-law tort claims (counts X–XV) against them should be dismissed so they can be properly exhausted under the FTCA.[44] As far as Metro's motion to dismiss is concerned, this leaves two categories of claims for my review: (1) a *Monell* claim against Metro and Sheriff Gillespie (count VIII) and (2) the state-law claims against Sheriff Gillespie (counts X–XV). I dismiss them all with a narrow opportunity to amend.

*1. Plaintiffs' <u>Monell</u> claim is dismissed with leave to amend because it just formulaically recites the elements of a cause of action.*

A municipal entity may be held liable for its employees' conduct under *Monell* if the employees' conduct was the result of (1) an expressly adopted official policy, (2) a longstanding practice or custom that constitutes the standard operating procedure of the municipality, (3) a decision of an official who was a final policymaking authority whose edicts may fairly be said to represent official policy, or (4) a municipality's failure to train its employees when the failure to

---

[43] Michael Twomey-Walsh is identified as in the complaint as Michael Twomey.

[44] It does not appear that Marty LNU has been served (likely because his last name is unknown). Because it has been more than 180 days since the complaint was filed, plaintiffs are ordered to show cause why their claims against this defendant should not be dismissed without prejudice. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (noting that Doe pleadings are disfavored in federal court).

1 train amounts to deliberate indifference to the rights of others.[45]

2 Plaintiffs allege that Metro had a written policy prohibiting "the use of certain individuals with violent criminal convictions as informants" and an unwritten custom of disregarding this policy by recruiting violent informants for its gang unit.[46] Metro contends that plaintiffs' claim is implausible because the complaint alleges that one of Metro's detectives applied the written policy and concluded that Gonzales "was not a [suitable] candidate to be [used as] a confidential informant" because of his violent history.[47] But that factual allegation does not defeat plaintiffs' claim. When read in context, it bolsters it. There is no dispute that Gonzales was hired as an informant or that Metro had a policy prohibiting the use of violent criminals as informants. The question then is whether plaintiffs adequately plead that Metro closed the door on Gonzales's recruitment but opened a window.

I find that plaintiffs plausibly pled a closed-door/opened-window custom in support of their *Monell* claim. Despite the detective's concerns about Gonzales's checkered past, Gonzales nevertheless became an informant and committed at least one crime. Plaintiffs' theory may ultimately suffer from causation problems because it is unclear whether it was Metro or the FBI who was the "moving force" behind Gonzales's recruitment.[48] But at this early stage of litigation, it appears to me that plaintiffs have stated a plausible claim by alleging that Metro ignored written policy by proceeding with their recruitment efforts and referring Gonzales to the FBI despite his violent history.

Nonetheless, I grant Metro's motion to dismiss because plaintiffs have not plausibly alleged

---

[45] *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

[46] *See* ECF No. 1 at ¶¶ 196–98.

[47] ECF No. 23 at 12 (citing ECF No. 1 at ¶¶ 52–53).

[48] *See Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d, 950, 957 (9th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) ("Generally, a municipality is liable under *Monell* only if a municipal policy or custom was the 'moving force' behind the constitutional violation. . . . In other words, there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'").

a history of similar acts. Under *Monell*, a single instance of misconduct does not establish a municipal custom.[49] Although plaintiffs allege that there were "numerous instances where LVMPD informants committed violent crimes once released pursuant to an informant agreement,"[50] this conclusory allegation lacks the factual content that *Iqbal* requires because it does not demonstrate that Metro had a custom or practice of recruiting informants with violent pasts. It merely recites the element to *Monell* claim that requires a custom or practice. I therefore grant Metro's motion to dismiss this *Monell* claim with leave to file an amended complaint if plaintiffs can add true facts showing the requisite custom or practice.

### 2. *Plaintiffs' claims against Sheriff Gillespie are dismissed with limited leave to amend.*

Plaintiffs sue Sheriff Gillespie in his individual and official capacity for wrongful death, negligence, negligent infliction of emotional distress, negligent supervision and training, and vicarious liability. Sheriff Gillespie moves to dismiss all of these claims. He argues that plaintiffs' claims against him in his official capacity are redundant of the claims against Metro, and that the claims against him in his individual capacity are implausible because the complaint contains no factual allegations against him.[51]

Plaintiffs respond to the first argument with little more than a white flag. They begin by acknowledging that, under Ninth Circuit law, I may dismiss as redundant official-capacity claims against an officer if the entity the officer represents is also named.[52] And they cite an unpublished district court order from another district for the proposition that the word "may"—as used by the

---

[49] *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996).

[50] ECF No. 1 at ¶ 197.

[51] ECF No. 23 at 9.

[52] *See* ECF No. 38 at 8 (citing *Center for Bio–Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.")); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) (stating that official-capacity suits are merely an alternative way of pleading an action against the entity the defendant represents).

Ninth Circuit—is permissive and not mandatory.[53]  Thus, plaintiffs conclude, I am not required to dismiss the claims against Sheriff Gillespie in his official capacity because he was named in his official capacity to identify him as the official who acted in a policy-making capacity.[54] Nevertheless, the official-capacity claims against the sheriff are redundant, and I exercise my discretion to dismiss them on that basis.

This brings me to defendants' argument that the individual-capacity claims against Sheriff Gillespie lack factual support.  Plaintiffs' response to this argument is—like the complaint—thick on law but thin on facts.  The complaint references Sheriff Gillespie in just seven paragraphs that do little more than establish that Sheriff Gillespie is the sheriff.  The third paragraph alleges that acts were "committed against the Plaintiffs by . . . Defendant Douglas Gillespie."[55]  The thirteenth and fourteenth paragraphs allege that Sheriff Gillespie is employed by Metro as a sheriff.[56]  And paragraphs 195, 197, 199 and 201 effectively repeat paragraph 3 by conclusorily alleging that Sheriff Gillespie "encouraged, allowed, and/or ratified" or was "a moving force [behind] and/or proximate cause" of the constitutional violations.[57]

Plaintiffs attempt to bootstrap facts to these allegations by arguing that other defendants violated plaintiffs' constitutional rights while "acting within the scope of [their] employment as a LVMPD police officer."[58]  But this doesn't help.  The factual narrative of plaintiffs' complaint does not plausibly establish that Sheriff Gillespie personally did anything to violate anyone's rights.  The individual allegations against him are nothing more than the "labels and conclusions" that *Iqbal*

---

[53] ECF No. 38 at 8:5.

[54] *See* ECF No. 38 at 8:25.

[55] ECF No. 1 at ¶ 3.

[56] *Id.* at ¶¶ 13, 14.

[57] *Id.* at ¶¶ 195, 197, 199, 201.

[58] *See* ECF No. 38 at 12 (citing ECF No. 1 at ¶ 16).

1  deems insufficient to survive a Rule 12(b)(6) challenge.[59]  I therefore dismiss the individual-capacity

2  claims against Sheriff Gillespie with leave to file an amended complaint if the plaintiffs can plead

3  true facts showing that Sheriff Gillespie had personal involvement in these circumstances.

**D.  The federal defendants' motion to dismiss is granted because defendants Smith, Sazer, and Twomey-Walsh are entitled to qualified immunity.**

6  Because the parties stipulated that the United States should be substituted in for defendants

7  Smith, Sazer, and Twomey-Walsh and that the state-tort-based claims (counts X–XV) against them

8  should be dismissed to proceed under the FTCA, the only remaining claims against these federal

9  defendants are plaintiffs' *Bivens* claims.  The United States moves to dismiss these claims, arguing

10  that Smith, Sazer, and Twomey-Walsh are entitled to qualified immunity because they did not

11  violate a clearly-established right.  I agree, and I grant the motion.

*1.  Qualified immunity*

13  "The doctrine of qualified immunity shields officials from civil liability so long as their

14  conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable

15  person would have known.'"[60]  Officers "are not entitled to qualified immunity if (1) the facts 'taken

16  in the light most favorable to the party asserting the injury show that the defendants' conduct

17  violated a constitutional right' and (2) the right was clearly established at the time of the alleged

18  violation."[61]

19  "Public officials are immune from suit [. . .] unless they have 'violated a statutory or

---

[59] *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

[60] *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (Nov. 9, 2015) (quoting *Pearson,* 555 U.S. at 221).

[61] *Sandoval v. Las Vegas Metropolitan Police Dep't.*, 756 F.3d 1154 (9th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  These inquiries may be conducted in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Because the parties' arguments center on the existence of a clearly established constitutional right, I begin my inquiry there.

constitutional right that was clearly established at the time of the challenged conduct.'"[62] The central dispositive inquiry essential to finding a right "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[63] "To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right."[64] It is not necessary for a plaintiff to cite a case that is "directly on point, [but] existing precedent must have placed the . . . constitutional question beyond debate."[65] As the Ninth Circuit recently explained in *Hamby v. Hammond*, a defendant is entitled to qualified immunity so long as "none of our precedents 'squarely governs' the facts here," meaning that "we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as [the officials] did."[66]

### 2. *The officers are entitled to qualified immunity because it was not clearly established in 2013 that the state creates danger in violation of a constitutional right when it recruits a violent criminal as a police informant.*

Plaintiffs contend that the officers are not entitled to qualified immunity because, under the Due Process Clause, it is clearly established that an officer may be held liable for failing to protect an individual when the state has placed that individual in danger through its affirmative conduct.[67] The United States responds that plaintiffs' argument categorizes the officers' conduct too broadly.[68] Plaintiffs' argument relies on the state-created danger theory, recognized by the Supreme Court's

---

[62] *City & Cty. of San Francisco, Calif. v. Sheehan*, __ U.S. __, 135 S. Ct. 1765, 1774 (May 18, 2015) (quoting *Plumhoff v. Rickard*, 572 U.S. __, 134 S. Ct. 2012, 2023 (2014)).

[63] *Saucier*, 533 U.S. at 202.

[64] *Hamby v. Hammond*, — F.3d —, No. 15-35283, 2016 WL 1730532, at *3 (9th Cir. May 2, 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)) (emphasis in *Hamby*).

[65] *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011)).

[66] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[67] ECF No. 36 at 14–17.

[68] ECF No. 24 at 8–11.

1989 decision in *DeShaney v. Winnebago County*.[69] The High Court held that the state does not have a duty to protect people from privately inflicted harms unless the state (1) has a special relationship with the victim, like when the victim is in the state's custody, or (2) is responsible for creating and exposing an individual to a danger that he would not have otherwise faced.[70]

A few months after *DeShaney*, the Ninth Circuit formally recognized the state-created-danger theory in *Wood v. Ostrander*[71] and has since addressed the intersection of qualified immunity and state-created danger on at least three occasions: in *Munger v. City of Glasgow*, *Kennedy v. City of Ridgefield*, and *Henry A. v. Willden*.[72] In each case, the panel held that the state-created danger theory recognized by *DeShaney* and *Wood* constitutes a clearly-established right for qualified-immunity purposes. In *Henry A.* the court found, "[i]t is clearly established that 'when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'"[73] And the *Kennedy* court concluded, "[i]t is beyond dispute that in September 1998, it was clearly established that state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger she would not otherwise have faced."[74]

But recent Supreme Court authority requires me to use a different lens—more telephoto than wide angle—to focus in on this clearly established right. The High Court has "repeatedly [told] courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."[75] "The dispositive question is 'whether the violative nature of *particular* conduct is

---

[69] *DeShaney v. Winnebago Cty.*, 489 U.S. 189 (1989).

[70] *Id.* at 197.

[71] *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir. 1989).

[72] *Munger v. City of Glasgow*, 227 F.3d 1082, 1085–86 (2000); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1066 (9th Cir. 2006); *Henry A. v. Willden*, 678 F.3d 991, 1000 (9th Cir. 2012).

[73] 678 F.3d at 1000 (quoting *DeShaney*, 489 U.S. at 199–200).

[74] 439 F.3d at 1066.

[75] *City & Cty of San Francisco v. Sheehan*, —– U.S. ——, 135 S.Ct. 1765, 1775–76 (2015).

clearly established."[76] "In a nutshell, according to the Supreme Court, [a defendant] is entitled to qualified immunity so long as 'none of our precedents squarely governs the facts'" alleged in the complaint.[77]

The narrow scope of this inquiry is illustrated by the Supreme Court's most recent qualified-immunity opinions. For example, in *Mullenix v. Luna*, the Court found that an officer enjoyed qualified immunity from suit after shooting a suspect who was fleeing by car. The Fifth Circuit found that the officer was "not entitled to qualified immunity because 'the law was clearly established such that a reasonable officer would have known that the use of deadly force, absent a sufficiently substantial and immediate threat, violated the Fourth Amendment.'"[78] The Court criticized the Fifth Circuit for "defin[ing] the qualified immunity inquiry at a high level of generality—whether any governmental interest justified choosing one tactic over another—and then fail[ing] to consider that question in 'the specific context of the case.'"[79] "The relevant inquiry," the Court explained, "is whether existing precedent placed the conclusion that Mullenix acted unreasonably in these circumstances 'beyond debate.' The general principle that deadly force requires a sufficient threat hardly settles this matter."[80] The Court then evaluated the very particular details Mullenix encountered and reversed "the Fifth Circuit's determination that Mullenix [wa]s not entitled to qualified immunity."[81]

---

[76] *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 131 S. Ct. at 2074) (emphasis supplied by *Mullenix*); *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam ) (determining whether a right is clearly established "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" (quoting *Saucier*, 533 U.S. at 201)); *Hamby*, 2016 WL 1730532, at *3 ("[T]he key question is whether the defendants should have known that their specific actions were unconstitutional given the specific facts under review.").

[77] *Hamby*, 2016 WL 1730532, at *4 (quoting *Mullenix*, 136 S. Ct. at 310).

[78] *Mullenix*, 136 S. Ct. at 308 (quoting *Luna v. Mullenix*, 773 F.3d 712, 725 (5th Cir. 2014)).

[79] *Id*. at 310 (internal citations omitted).

[80] *Id*. at 309 (internal citations omitted).

[81] *Id*. at 312.

The Court employed the same approach in *City and County of San Francisco v. Sheehan*[82] to reverse the Ninth Circuit's ruling that officers did not enjoy qualified immunity from suit by a mentally unstable suspect after officers entered her home because she was behaving irrationally and shot her. The Court criticized the Ninth Circuit's approach of broadly looking at excessive force rather than narrowing in on the unique facts of the case, admonishing, "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures"[83]:

> the central error in the Ninth Circuit's reasoning is apparent. The panel majority concluded that [its precedent] "would have placed any reasonable, competent officer on notice that it is unreasonable to forcibly enter the home of an armed, mentally ill suspect who had been acting irrationally and had threatened anyone who entered when there was no objective need for immediate entry." But even assuming that is true, no precedent clearly established that there was not "an objective need for immediate entry" here. No matter how carefully a reasonable officer read [Ninth Circuit precedent] beforehand, that officer could not know that reopening Sheehan's door to prevent her from escaping or gathering more weapons would violate the Ninth Circuit's test, even if all the disputed facts are viewed in respondent's favor. Without that "fair notice," an officer is entitled to qualified immunity.[84]

For Montoya's case, this narrow-focus requirement means that the federal defendants are entitled to qualified immunity unless it was clearly established that the state creates danger when it recruits a violent criminal as a police informant—that "precedent on the books" at the time Officers Smith, Sazer, and Twomey-Walsh acted in 2013 "would have made clear to [them] that [recruiting a violent criminal as a police informant] violated the Constitution."[85] Plaintiffs cite no case for this proposition and I find none. I therefore find that Officers Smith, Sazer, and Twomey-Walsh enjoy qualified immunity from these remaining claims, and I grant the United States' motion to dismiss the federal claims against these defendants with prejudice.

---

[82] *City and County of San Francisco v. Sheehan*, __ U.S. __, 135 S. Ct. 1765 (2015).

[83] *Sheehan*, 135 S. Ct. at 1776.

[84] *Id.* at 1777 (internal citations omitted).

[85] *Id.* at 2045.

**E.     Instructions for the Amended Complaint.**

Because plaintiffs' arguments raise questions about the futility of amendment, I heed the Ninth Circuit's warning that district courts should grant leave to amend "unless it is clear . . . that the complaint could not be saved by any amendment."[86] For this reason, my dismissal of plaintiffs' claims against Danielle Pieper, their *Monell* claim against Metro, and their individual-capacity claims against Sheriff Gillespie are dismissed without prejudice and with leave to amend if they can plead true facts—not merely conclusory allegations—(1) Attorney Pieper engaged in conduct not intimately associated with the judicial phase of the criminal process; (2) Metro had a custom or practice of recruiting informants with violent pasts and had done so in other instances; and (3) Sheriff Gillespie personally engaged in conduct that gives rise to his individual liability for plaintiffs' claims.

Plaintiffs are reminded that an amended complaint supersedes the prior complaint and must be complete in itself. If plaintiffs decide to file an amended complaint to cure the defects outlined in detail in this order, they are cautioned that they must not restate any claims that have been dismissed with prejudice and without leave to amend; these claims are preserved for appeal without the need to replead them now.[87] The amended complaint must be filed by July 18, 2016. If plaintiff does not file an amended complaint by that date, this case will proceed against just two defendants: Marty LNU and Raul Gonzales.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that:

- Plaintiffs are ordered to **SHOW CAUSE by Monday, July 18, 2016,** why the claims against defendant Marty LNU should not be dismissed;
- Defendant Pieper's motion to dismiss **[ECF No. 4] is GRANTED; all claims against her are dismissed with leave to amend**;

---

[86] *Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009).

[87] *See Lacey*, 693 F. 3d at 928 ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.").

- Metro and Sheriff Gillespie's motion to dismiss **[ECF No. 23] is GRANTED; all claims against the Las Vegas Metropolitan Police Department and Sheriff Gillespie are dismissed with leave to amend the individual-capacity claims against Sheriff Gillespie only**;

- Plaintiffs have until by **Monday, July 18, 2016**, to file any amended complaint. If no amended complaint is filed, this case will proceed on the claims against Marty LNU and Raul Gonzales only; and,

- The United States' motion to dismiss **[ECF No. 24] is GRANTED**. All remaining claims against Richard Smith, David Sazer, and Michael Twomby-Walsh are dismissed with prejudice.

Dated this 24th day of June, 2016.

_____
Jennifer A. Dorsey
United States District Judge